**IMMIGRANT RIGHTS CLINIC**
**WASHINGTON SQUARE LEGAL SERVICES, INC.**
**NEW YORK UNIVERSITY SCHOOL OF LAW**
245 SULLIVAN STREET, 5TH FLOOR
NEW YORK, NEW YORK 10012
TEL: 212-998-6430
FAX: 212-995-4031

ALINA DASYOSMIN BADIE
JESSICA ROFÉELENA HODGES
NANCY MORAWETZDANIEL KIM
*Supervising Attorneys**Legal Interns*

March 17, 2022

The Honorable Judge Katherine Polk Failla
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007



  RE:   *L.G.C. v. Decker, et al.*, 21-cv-08800 (KPF)

Dear Honorable Judge Failla:

Petitioner L.G.C., through undersigned counsel, submits this letter motion seeking leave to file under seal the enclosed report of Dr. Diomaris Safi, as referenced in L.G.C.'s February 17, 2022 letter. *See* Ex. A, Report of Evaluation Conducted by Dr. Diomaris Safi, Psy.D. ("Safi Report") and C.V.; *see also* ECF 43 at 3 n. 11 (referencing Dr. Safi's evaluation of L.G.C.). Dr. Safi is a bilingual licensed psychologist with the U.C.L.A. Hispanic Neuropsychiatric Center of Excellence and specializes in forensic and neuropsychological evaluations. *See* Ex. A. Her report includes an assessment of L.G.C.'s cognitive deficits and adaptive functioning based on her clinical interview of L.G.C. and collateral interviews with seven of L.G.C.'s relatives and co-workers. As discussed herein, the Safi Report is relevant to L.G.C.'s pending habeas petition and motion for preliminary injunction and/or release under *Mapp v. Reno* and is responsive to findings in Dr. Barry Rosenfeld's report at ECF 35.

Dr. Safi's enclosed report highlights a number of key findings regarding L.G.C.'s cognitive profile that are relevant to L.G.C's claims that Respondents are deliberately indifferent to his serious medical needs, have subjected him to punitive conditions, and are discriminating against him and failing to provide reasonable accommodations based on his disabilities. *See, e.g.,* ECF 51 (summarizing claims and citing ECF 3 at ¶¶ 79-86; 87-92; 96-99; ECF 6 at 4, 8–9, 15–16; ECF 20 at 2, 6–14; ECF 27 at 1-3; ECF 43). Moreover, her findings are responsive to various observations made in Dr. Rosenfeld's report, which include his discussion of the "absence of any other evidence to suggest confusion or comprehension difficulties" and variability in testing, ECF 35 at 6-7, and his diagnostic assessment where he questions L.G.C.'s self-reporting of brain injury and psychiatric symptoms prior to detention, relying in part on a perceived inconsistency with "Mr. G.C.'s apparent ability to maintain adequate functioning in the community throughout the decade prior to his incarceration", ECF 35 at 7.

First, Dr. Safi found limitations in L.G.C.'s adaptive functioning, including his conceptual skills, social skills, and practical skills, concluding that L.G.C. "shares many of the characteristics and needs of those with a diagnosis of IDD [Intellectual Developmental Disorder]." Safi Report at

13. During her clinical interview of L.G.C., she observed instances where L.G.C. "had difficulty conceptualizing his ideas", would "los[e] his train of thought," and was "tangential" and "distracted". *Id.* at 8. While Dr. Safi found that L.G.C. does have certain practical and social adaptive strengths, she found adaptive functioning deficits in oral and written communication, academics, comprehension, communication, gullibility, and naivete, consistent with his Borderline Intellectual Functioning diagnosis and similar to those who have an Intellectual Developmental Disorder. *Id.* at 8-12 (summarizing collateral reports and findings).

Second, through the interviews with L.G.C.'s family members and co-workers, Dr. Safi identified numerous prenatal or biomedical, perinatal, and postnatal risk factors that are highly relevant to his unique presentation of cognitive deficits and psychiatric symptoms. Safi Report at 4–6, 8-11 (describing reports of prenatal pesticide exposure, perinatal birth injury, and postnatal Traumatic Brain Injury). While Dr. Safi was unable to confirm an IDD diagnosis without an in-person assessment of the conditions of L.G.C.'s upbringing in Puebla, Mexico, the collateral interviews with individuals who knew L.G.C. did provide evidence of an acquired brain injury. First, L.G.C.'s older brother reported that L.G.C. suffered a potential Traumatic Brain Injury as a teenager when L.G.C. was "beaten on the head… by men who came to the house to steal from them" leading to a loss of consciousness and hospitalization. *Id.* at 5. This is in addition to the potential Traumatic Brain Injury that L.G.C. reported while working for a tent company, an injury that a co-worker of L.G.C. corroborated. *Id.* at 10-11 ("Mr. Martinez witnessed how a large tube fell on L.G.C. while he was working at Classic Tents. L.G.C. reportedly lost consciousness after the incident and felt ill for months after. Their boss reportedly convinced L.G.C. to 'wait it out' and not seek medical attention."). While further medical evaluation would be necessary to confirm Traumatic Brain Injury, Dr. Safi observed that L.G.C. demonstrates a "perseverative" thought process and "his tangible way of answering questions is often seen in patients with frontal lobe deficits due to TBI [Traumatic Brain Injury]." *Id.* at 8, 13. An acquired brain injury would be consistent with L.G.C's presentation of various symptoms, including his psychotic symptoms, as discussed by prior experts.

Third, Dr. Safi emphasizes L.G.C.'s credibility in reporting his history, and the consistency of his reports with those reported by family members and co-workers. Specifically, Dr. Safi states that "all of the informants interviewed who knew L.G.C. and his family in Mexico were consistent in confirming the traumatic experiences that L.G.C. reported to both Dr. Rosenfeld and Dr. Vazquez-Casals," including a lengthy report by his brother who has not been in touch with L.G.C. since before his detention. *Id.* at 7. She also stated that L.G.C. was cooperative and appeared to put forth appropriate effort in answering her questions during their clinical interview. *Id.* at 8. Commenting on Dr. Rosenfeld's MMPI-3 analysis, she notes that "[t]he impact that [L.G.C.]'s intellectual abilities may have had on his performance on the MMPI-3 does not seem to be reflected in Dr. Rosenfeld's analysis" and that "'most instruments used to detect malingering have not been normed with individuals with [intellectual disabilities]'". *Id.* at 7 (citation omitted). She did not find any inherent tension between L.G.C.'s reported history and psychiatric symptoms, noting that "someone with the significant traumatic sequelae [L.G.C.] has experienced is probably at a higher risk of mental deterioration and need for high level psychiatric services" and "that his presentation and history of significant trauma is consistent with a diagnosis of PTSD [Post-Traumatic Distress Disorder]." *Id.* at 7, 13. She concurs with Dr. Rosenfeld that "the impact of extended periods of isolation are likely to result in exacerbated psychological distress." *Id.* at 7.

Finally, Dr. Safi emphasizes that "[t]he cumulative impact of all his disabilities increases the risk of rapid deterioration if appropriate interventions are not provided." *Id.* at 13. As Dr. Safi states, L.G.C.'s "limited cognitive resources coupled with his psychiatric disabilities make him 'vulnerable to abuse and neglect due to tendencies towards errors in judgement such as acquiescence to perceived authority, gullibility, naivete, and exploitation by others.'" *Id.* (citation omitted).

In light of such vulnerabilities, Respondents have violated L.G.C.'s rights by failing to acknowledge his disabilities, failing to treat symptoms, and subjecting L.G.C. to abuse, prolonged isolation, and other punitive conditions that have exacerbated his psychological distress, suicidal ideation, and overall decompensation.

Thus, for the foregoing reasons, Petitioner therefore respectfully seeks leave to file the enclosed report. Moreover, because the Safi Report includes L.G.C.'s personal identifying information, summarizes his medical and trauma history, and references reports by various family members who are identified by name, Petitioner respectfully requests that the report be filed under seal pursuant to the prior sealing order in this case.

Counsel for Petitioner reached out to counsel for Respondents about this letter motion seeking leave to file the Safi Report under seal. Respondents stated that they take no position on the filing of the report, but reserve the right to object to the report based on its contents after reviewing the report. Respondents consent to the report being filed under seal.

Respectfully submitted,

/s/ Alina Das
Alina Das
Yosmin Badie, *Legal Intern*
Elena Hodges, *Legal Intern*
Daniel Kim, *Legal Intern*
Washington Square Legal Services
NYU Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, NY 10012
Tel: 212-998-6467
alina.das@nyu.edu
*Counsel for Petitioner*

cc: Counsel for Respondents

3

Application DENIED.  The Court considers briefing to be complete with respect to L.G.C.'s habeas petition and motion for a preliminary injunction.  If the Court determines that additional materials would be useful, it will promptly reach out to the parties.  The Clerk of Court is directed to strike docket entry 56 from the docket.  Further, the Clerk of Court is directed to terminate the pending motion at docket number 55.

Dated:     March 21, 2022			SO ORDERED.
           New York, New York

						*Katherine Polk Failla*

						HON. KATHERINE POLK FAILLA
						UNITED STATES DISTRICT JUDGE